IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTIONE BAILEY, | ) No. C 08-1149 MMC (PR) |
| Petitioner, | ) **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY; DIRECTIONS TO CLERK** |
| v. | |
| W.J. SULLIVAN, Warden, | |
| Respondent. | |
| _____ | ) |

Before the Court is the above-titled petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by petitioner Antione Bailey, who proceeds pro se and challenges the validity of a judgment obtained against him in state court. Respondent has filed an answer to the petition, and petitioner has filed a traverse.[1]

---

[1] Petitioner initially named James Walker, former warden of California State Prison – Sacramento, as the respondent in this action. The California Department of Corrections online inmate locator service shows plaintiff has been transferred to California State Prison – Los Angeles County ("CSP-LAC"). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, W.J. Sullivan, the current warden of CSP-LAC, is hereby SUBSTITUTED as respondent in place of petitioner's prior custodian. Plaintiff is reminded that he must keep the Court and all parties informed of any change of address.

## I. PROCEDURAL HISTORY

In 2005, an Alameda County jury found petitioner guilty of kidnapping for purpose of carjacking (Cal. Pen. Code § 209.5(a))[2], attempted second degree robbery (Pen. Code §§ 211/664), and second degree robbery (Pen. Code § 211). (Ex. A at 345-49.)[3] The trial court sentenced petitioner to three years to life in state prison. (Ex. A at 418-35.)

In a reasoned opinion, the California Court of Appeal affirmed petitioner's conviction. (Ex. E.) The California Supreme Court summarily denied the petition for review. (Ex. G.)

Petitioner did not pursue habeas relief in state court.

On October 24, 2008, petitioner filed the instant petition for a writ of habeas corpus.

## II. STATEMENT OF FACTS

The California Court of Appeal found the facts underlying petitioner's conviction to be as follows:

> [Petitioner] was charged in an amended complaint, filed August 11, 2004, with kidnapping (§ 207, subd. (a)), robbery (§ 211), attempted robbery (§ 211), and carjacking (§ 215, subd. (a)). The complaint also alleged that [petitioner] had suffered two prior felony convictions. A preliminary hearing was held over two days in March 2005. Two weeks after the preliminary hearing, an information was filed, replacing the simple kidnapping charge with a charge of kidnapping for the purpose of carjacking. (§ 209.5, subd. (a).)
>
> Soon after the filing of the information, [co-defendant] Warfield made a motion, joined by [petitioner], to dismiss the new charge on the ground that it was added to penalize the defendants' decision to proceed with a preliminary hearing. The claim was supported by a declaration from Warfield's counsel, who stated that prior to the preliminary hearing the prosecutor had offered to accept a plea of guilty from both defendants to simple kidnapping. According to the declaration, the prosecutor insisted "not only that the defendants plead to [simple kidnapping] and accept five years state prison but that if they did not – they could expect to face [charges of aggravated kidnapping] after preliminary examination. It appears that at least six pre preliminary examination [sic] appearances were made between 9-20-04 and 2-17-0[5] and the DA's position was consistent during this period – that is that the defendants ought to resolve this case or face aggravated charges after preliminary examination." After hearing argument, the trial court denied the motion.

---

[2] Except as otherwise specified, all statutory references herein are to the California Penal Code.

[3] All references herein to exhibits are to exhibits submitted by respondent in support of the Answer.

2

Warfield pled guilty prior to trial. [Petitioner] refused to accept a similar plea offer, an offer his attorney later characterized as a [sic] "reasonable."

At trial, the victim of the kidnapping, Salvador Merino, testified that he was sitting in his car very early one morning. Warfield appeared at his side window holding a gun. When Merino rolled down the window, Warfield pressed the gun against his throat and told him to unlock the doors. [Petitioner] and Warfield entered the car and rifled through the glove compartment and Merino's wallet and shoes, taking $8 in cash. Throughout, Warfield kept Merino at gunpoint. [Petitioner] gave most of the orders.

[Petitioner] sat in the front seat and Warfield in the back seat. Warfield handed the gun to [petitioner], who told Merino to begin driving, giving him directions as he drove. Merino kept his eyes on the road, after having been told that he would be shot if he looked at the two. At one point, [petitioner] directed him to park across the street from a bank. [Petitioner] left the car, was gone for less than five minutes, and got back into the car. During the entire incident, Merino was afraid of being hurt or killed, and he made no attempt to escape because he was afraid that he or someone else would be shot.

When a police car pulled in behind Merino's car, Merino began lightly tapping his brakes to attract attention. Attracted by the flashing lights, the officer followed and pulled the car over for a traffic violation. As Merino was pulling over, [petitioner] handed the gun back to Warfield, who was still sitting in the back seat. The officer began checking identification and ordered the occupants to leave the car. At this point, Merino told the officer that he was the victim of a carjacking. In searching the trunk, the officer found a pellet gun near an opening from the back seat of the passenger compartment. The total time elapsed from the initial assault to arrest was about an hour.

A second victim, Geraldo Cruz, testified that during the time [petitioner] left the car near the bank, [petitioner] attempted to rob him. [Petitioner] approached Cruz, grabbed him by the collar, displayed a gun, and demanded money. Cruz claimed not to have any money and opened his wallet as proof. [Petitioner] released him and ran back to the car.

The jury found [petitioner] guilty on all four counts.[4]

Prior to sentencing, defense counsel submitted a request to the court to dismiss the charge of aggravated kidnapping pursuant to section 1385, which permits a court sua sponte, or at the request of the prosecution, to dismiss a criminal action. Counsel argued that the lesser sentence received by Warfield, who accepted a plea offer, [petitioner's] conduct during the crime, in which the victim was threatened but not harmed, [petitioner's] youth and difficult life history, and his limited criminal record all weighed in favor of dismissal of a conviction carrying a life sentence.

Before addressing counsel's request at the sentencing hearing, the trial court heard and responded to a plea for clemency from [petitioner's] grandmother. The court began by commenting on [petitioner's] failure to accept the plea offer, characterizing it as "stupidity." The court then reviewed [petitioner's] past criminal convictions, which it characterized in the following manner:

---

[4] After the guilty verdict, the carjacking count was dismissed as included in the aggravated kidnapping count. (Ex. A at 418-35.)

3

> "Attempted burglary, possession of drugs for sale, another possession [of] drugs for sale, another possession of drugs for sale. . . . A sale of drugs, auto theft, escape, two more thefts and a battery. As an adult he has a sale of drugs, a possession of drugs. Now he has a carjack. . . ." The court concluded, "[R]arely do I explain my sentencing. But I look back on his record, what he's done and what he did in this case, I probably should be giving a more severe sentence."
>
> Defense counsel then argued for dismissal of the aggravated kidnapping charge under section 1385, reiterating the themes of his sentencing letter. At one point, counsel addressed the rejected plea offer, noting, "When I think of . . . the interest of justice, I really think that we . . . should not be sitting here right now, whether it's [petitioner's] fault for not making the right decision or in many ways the District Attorney's fault for putting him in a position where he risks his own life to go to trial." The court interrupted, telling counsel, "[Y]ou're too intelligent of a person, you're too professional of a lawyer to make that statement. It's not the D.A.'s fault. It's [petitioner's] fault. He's the person that turned this deal down. . . . He was just stupid. It's total stupidity." Counsel responded, partially agreeing with the court, before continuing with his argument. At counsel's conclusion, the court said, "I am going to follow my tentative decision. Once again, it all comes back to [petitioner]. He did the crime, he's going to do the time. He's the one that turned down the D.A.'s offer. He was sitting over there laughing at the start of the trial. He's saying how he's going to walk out and he's going to be in the audience when the case was over. Once he saw those jurors start crying at that decision, I think he finally realized what everybody had told him all the way along."
>
> At that point in the proceeding, defendant addressed the court directly. After he finished, the court responded, "[O]nce again, you can only blame yourself. [¶] . . . [¶] I remember you coming in here laughing at the start of the jury trial, thinking this was all fun and games. I know this, I know you're represented by a superb lawyer, Mr. Dalton. I know he got other lawyers to come in and talk to you, try to talk some sense into you, but you just weren't going to listen. You knew better than everybody else. You have to suffer the consequences." The court then imposed a sentence of three years [to] life.

(Ex. E at 2-5) (footnote omitted).

## III. DISCUSSION

A. <u>Standard of Review</u>

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

4

1 unreasonable application of, clearly established Federal law, as determined by the Supreme
2 Court of the United States; or (2) resulted in a decision that was based on an unreasonable
3 determination of the facts in light of the evidence presented in the State court proceeding."
4 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Additionally, habeas
5 relief is warranted only if the constitutional error at issue had a "substantial and injurious
6 effect on the verdict." Penry v. Johnson, 532 U.S. 782, 796 (2001) (internal quotation and
7 citation omitted).

8 A state court decision is "contrary to" clearly established Supreme Court precedent if
9 it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases"
10 or if it "confronts a set of facts that are materially indistinguishable from a decision of [the
11 Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams,
12 529 U.S. at 405-06. "Under the 'unreasonable application' clause, a federal habeas court
13 may grant the writ if the state court identifies the correct governing legal principle from [the
14 Supreme] Court's decisions but unreasonably applies that principle to the facts of the
15 prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because
16 that court concludes in its independent judgment that the relevant state-court decision applied
17 clearly established federal law erroneously or incorrectly. Rather, that application must also
18 be unreasonable." Id. at 411.

19 Section 2254(d)(1) restricts the source of clearly established law to the Supreme
20 Court's jurisprudence. "[C]learly established federal law, as determined by the Supreme
21 Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme]
22 Court's decisions as of the time of the relevant state-court decision." Id. at 412. "A federal
23 court may not overrule a state court for simply holding a view different from its own, when
24 the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540
25 U.S. 12, 17 (2003).

26 In the present case, the only state court to address the merits of petitioner's claims is
27 the California Court of Appeal on direct review. (Ex. E.) The Court of Appeal thus was the
28 highest court to have reviewed the claims in a reasoned decision, and it is the Court of

Appeal's decision that this Court reviews herein. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

B.  Petitioner's Claims

Petitioner claims his conviction and sentence are invalid because: (1) the prosecutor punished him for exercising his right to a preliminary hearing and trial by replacing the simple kidnapping charge with a more serious charge of aggravated kidnapping, after petitioner refused to accept a plea offer; (2) the trial court's instruction to the jury on the charge of kidnapping for purpose of carjacking was erroneous; (3) the trial court wrongly instructed the jury on the burden of proof for assessing witness credibility; (4) the prosecutor engaged in misconduct during rebuttal argument; (5) the trial court wrongly denied petitioner's motion, brought on grounds of vindictive pretrial charging, to dismiss the charge of kidnapping for purpose of carjacking; and (6) the sentence of three years to life amounts to cruel and unusual punishment. The Court addresses each claim in turn.

1.  Vindictive Prosecution

As discussed above, prior to the preliminary hearing, the prosecutor offered to accept a plea of guilty to simple kidnapping. Petitioner refused to accept the plea offer, and a preliminary hearing was held. Two weeks after the preliminary hearing, an information was filed, replacing the simple kidnapping charge with an increased charge of kidnapping for purpose of carjacking. Petitioner claims the filing of the more serious charge was intended to penalize him for exercising his right to a preliminary hearing and trial and thus amounted to vindictive prosecution.

United States Supreme Court authority clearly holds that both the practice of plea bargaining itself as well as the possibility that a defendant may receive a longer sentence after a trial than he would have received had he pled guilty pursuant to a plea agreement are consistent with due process. The Supreme Court has described the practice of plea bargaining as something "to be encouraged as an essential and desirable component of the administration of justice." Chaffin v. Stynchcombe, 412 U.S. 17, 31 n.18 (1973) (internal quotation and citation omitted). In Bordenkircher v. Hayes, 434 U.S. 357 (1978), the

6

1 Supreme Court confronted a situation in which a state prosecutor offered a plea agreement
2 and informed the defendant that if he did not plead guilty he would be charged with a crime
3 that carried a higher mandatory sentence. See id. at 358-59. The defendant rejected the
4 offer, was indicted by the prosecutor for the increased charge, and ultimately received the
5 stiffer sentence after a full trial. See id. at 359. In rejecting the defendant's claim that
6 threatening a defendant with a longer sentence for refusal to accede to a plea offer violates
7 the defendant's due process rights, the Supreme Court held that, although punishing a person
8 for exercising his legal rights is a violation of due process, "in the 'give-and-take' of plea
9 bargaining, there is no such element of punishment or retaliation so long as the accused is
10 free to accept or reject the prosecution's offer." See id. at 363. As the Bordenkircher court
11 observed, "by tolerating and encouraging the negotiation of pleas, [the Supreme Court] has
12 necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's
13 interest at the bargaining table is to persuade the defendant to forgo his right to plead not
14 guilty," and that "the decision whether or not to prosecute, and what charge to file or bring
15 before a grand jury, generally rests entirely in [the prosecutor's] discretion." See id. at 364;
16 see also, Corbitt v. New Jersey, 439 U.S. 212, 223 (1978) ("[W]itholding the possibility of
17 leniency from [defendants who refuse plea offers] cannot be equated with impermissible
18 punishment as long as our cases sustaining plea bargaining remain undisturbed.").

19 In sum, the Supreme Court has clearly established that encouraging a defendant to
20 plead guilty with the prospect of lenient sentencing is a constitutionally sound practice.
21 Thus, although petitioner's ultimate sentence was greater than what it would have been had
22 he pled guilty and not gone to trial, such fact is not sufficient to establish he was punished for
23 exercising his right to go to trial, nor does the record otherwise contain any facts
24 demonstrating petitioner's sentence was the result of an effort to punish him for the exercise
25 of a legal right.

26 Accordingly, petitioner is not entitled to habeas relief on this claim.

7

2. <u>Instructional Error – Aggravated Kidnapping</u>

Petitioner claims the trial court erred by failing to instruct that aggravated kidnapping required a "substantial" risk of increased harm. The Court of Appeal summarized this claim as follows:

> When *People v. Daniels* (1969) 71 Cal.2d 1119 (*Daniels*) was decided in 1969, the statute governing kidnapping for robbery, section 209, stated only that "any person who kidnaps or carries away any individual to commit robbery" is guilty of a crime. (*Id.* at p. 1125.) In *Daniels*, the Supreme Court interpreted the statute to exclude instances in which the forced movement of the victim was "merely incidental" to the commission of the robbery, such as movement within the confines of the victim's home. (*Id.* at p. 1140.) In stating its conclusion, the court held that section 209 excludes "those [robberies] in which the movements of the victim are merely incidental to the commission of the robbery and *do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself*." (*Id.* at p. 1139, italics added.) In *People v. Rayford* (1994) 9 Cal.4th 1 (*Rayford*), the court characterized this as a "two-part" test, noting that kidnapping for robbery "requires movement of the victim that is not merely incidental to the commission of the robbery, and which substantially increases the risk of harm over and above that necessarily present in the crime of robbery itself." (*Id.* at ¶ 12, 20.) *Rayford* applied this test to section 208, subdivision (d), which defined the crime of kidnapping for rape. (*Id.* at p. 20.)
>
> The statute defining the crime of kidnapping for carjacking, section 209.5, was enacted in 1993. Subdivision (b) of the statute appears to incorporate the *Daniels* test discussed in *Rayford*, but it leaves out the requirement that the asportation of the victim must "substantially" increase the risk of harm: "This section shall only apply if the movement of the victim is beyond that merely incidental to the commission of the carjacking, the victim is moved a substantial distance from the vicinity of the carjacking, and the movement of the victim increases the risk of harm to the victim over and above that necessarily present in the crime of carjacking itself." (§ 209.5, subd. (b).) When section 209, which now defines kidnapping for robbery or rape, was amended in 1997, the Legislature added language similar to that of section 209.5, subdivision (b), excluding the word "substantially." (Stats.1997, ch. 817, § 2, p. 4414.) [Petitioner] argues that the Legislature intended to adopt the *Daniels* test in its entirety in amending section 209.5 and that the omission of the word "substantially" from subdivision (b) was, in effect, an oversight by the Legislature.

(Ex. E at 8-9.)

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. See <u>Estelle</u>, 502 U.S. at 71-72. To obtain federal collateral relief for errors in the jury charge, a petitioner must show "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" <u>Id.</u> at 72 (quoting <u>Cupp v. Naughton</u>, 414 U.S. 141, 147 (1973)). The instruction

8

"may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. Id.

Here, in rejecting petitioner's claim, the Court of Appeal reasoned as follows:

> We do not write on a clean slate here. In discussing the amendment of section 209 in a footnote in *People v. Martinez* (1999) 20 Cal.4th 225 (*Martinez*), the Supreme Court noted, in dictum, that "Section 209(b)(2) thus codifies both *Rayford* . . . and a modified version of the [*Daniels*] asportation standard. [Citations.] Unlike our decisional authority, it does not require that the movement 'substantially' increase the risk of harm to the victim." (*Martinez*, at p. 232, fn. 4.) Citing *Martinez*, *People v. Ortiz* (2002) 101 Cal.App.4th 410 (*Ortiz*), rejected the same argument [petitioner] makes here regarding section 209.5, noting: "When the Legislature added the risk of harm element to section 209, it tracked identical language employed four years earlier when it enacted the kidnapping for carjacking statute. (§ 209.5, subd. (b).) It follows that the Legislature intended that the risk of harm element have the same meaning in both statutes, and it follows that the *Martinez* rule applies with equal force here. Accordingly, we hold that kidnapping for carjacking (§ 209.5), like aggravated kidnapping (§ 209), does not require that the physical movement of the victim substantially increase the risk of harm; it is enough that commission of the offense creates a risk of harm greater than that incidental to simple carjacking. And, indeed, that is what the statute states: 'This section shall only apply if the movement of the victim is beyond that merely incidental to the commission of the carjacking . . . and the movement of the victim increases the risk of harm to the victim over and above that necessarily present in the crime of carjacking itself.' (§ 209.5, subd. (b).)" (*Ortiz*, at p. 415.)
>
> We are persuaded by this logic and follow *Ortiz*. . . . While [petitioner] is correct that it is sometimes said that "'[t]he intent [of a statute] prevails over the letter'" (*People v. Pieters* (1991) 52 Cal.3d 894, 899, quoting *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735), it is even more commonly held that "[i]f the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) In this case, the Legislature has clearly omitted the word "substantial" in two similar statutes, enacted four years apart. In the four years since *Ortiz*, it has taken no action to alter these statutes. Because no absurd result follows from the omission, we follow *Ortiz* in applying the plain language of the statute.

(Ex. E at 9-11.)

In short, the California courts have conclusively resolved the issue against petitioner. Under California law, aggravated kidnapping does not require the physical movement of the victim substantially increase the risk of harm. See People v. Ortiz, 101 Cal. App. 4th 410 (2002). Under such authority, the jury instruction given here was a correct statement of California law. This Court must defer to the California courts' interpretation of its own laws. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (holding federal writ not available for

9

alleged error in interpretation or application of state law); <u>Aponte v. Gomez</u>, 993 F.2d 705, 707 (9th Cir. 1993) (holding federal courts are "bound by a state court's construction of its own penal statutes").

Accordingly, petitioner is not entitled to habeas relief on this claim.

3. <u>Instructional Error – CALJIC No. 2.21.2</u>

Petitioner claims the trial court erred in instructing the jury under CALJIC No. 2.21.2. The instruction, as given at petitioner's trial, reads as follows:

> A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his or her testimony in other particulars.

(Ex. A at 368; Ex. B at 458.)

Petitioner claims the use of CALJIC No. 2.21.2 violated his right to due process by lowering the prosecution's burden of proving petitioner's guilt from a standard of "beyond a reasonable doubt" to a standard of "preponderance of the evidence." The Court of Appeal denied this claim based on California Supreme Court authority rejecting such a challenge to the instruction. (<u>See</u> Ex. E at 15); <u>see</u> <u>also</u> <u>People v. Riel</u>, 22 Cal.4th 1153, 1200 (2000) (noting "[e]ven if the language 'probability of truth' standing alone would be somewhat suspect . . . , it does not stand alone") (internal quotation and citation omitted). The reasoning of the state courts is fully consistent with federal authority. As set forth in <u>Estelle</u>, the instruction "may not be judged in artificial isolation," <u>see</u> <u>Estelle</u>, 502 U.S. at 72 (internal quotation and citation omitted); the jury here was amply instructed that the prosecution's burden was to prove petitioner's guilt beyond a reasonable doubt (<u>see</u>, <u>e.g.</u>, Ex. B at 455, 460). Further, the Ninth Circuit, in rejecting a different challenge to CALJIC 2.21.2, has held the instruction constitutional, and, in so holding, found "[n]o reasonable jurist could conclude that, viewed in context, this instruction by itself so infected the entire trial that the resulting conviction violate[d] due process." <u>See</u> <u>Turner v. Calderon</u>, 281 F.3d 851, 865-66 (9th Cir. 2002)

Accordingly, petitioner is not entitled to habeas relief on this claim.

10

1  4. Prosecutorial Misconduct

2  Petitioner claims the prosecutor engaged in misconduct by "denigrating defense
3  counsel and accusing counsel of fabricating evidence." (Pet. at 8.) The Court of Appeal
4  summarized this claim as follows:

> During rebuttal argument, the prosecutor characterized defense counsel's argument as a claim that Merino was actually a participant who had "set up" [petitioner] and Warfield, an argument the prosecutor repeatedly called "clever." After arguing that the evidence did not support such a theory, the prosecutor said that "this is something that [defense counsel] or the defense is beginning to fabricate and create-[¶] . . . [¶]-after they look at all of the facts of the case." An objection to this comment was overruled. Twice the prosecutor argued, incorrectly, that counsel had originally contended that Warfield was the leader, with [petitioner] an unwilling participant. Both times an objection to the characterization was sustained. [Petitioner] contends that these lines of argument constituted prosecutorial misconduct.

11  (Ex. E at 15.)

12  Prosecutorial misconduct is cognizable in federal habeas corpus. "[T]he appropriate
13  standard of review for such a claim on writ of habeas corpus is the narrow one of due
14  process, and not the broad exercise of supervisory power." Darden v. Wainwright, 477 U.S.
15  168, 181 (1986) (internal quotation and citation omitted). A defendant's due process rights
16  are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." Id.;
17  Smith v. Phillips, 455 U.S. 209, 219 (1982) (noting, "the touchstone of due process analysis
18  in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of
19  the prosecutor"). Under Darden, the first issue is whether the prosecutor's remarks were
20  improper; if so, the next question is whether such conduct infected the trial with unfairness.
21  Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005). A prosecutorial misconduct claim is
22  decided "on the merits, examining the entire proceedings to determine whether the
23  prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction
24  a denial of due process." Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (internal
25  quotation and citation omitted).

26  Here, petitioner objects to two arguments made by the prosecutor. First, petitioner
27  claims the prosecutor called defense counsel "names." (Pet. at 8.) Second, petitioner claims
28  the prosecutor accused defense counsel of "fabricating evidence." (Id.) The Court addresses

11

each such claim in turn.

### a. Calling Names

The Court of Appeal, citing People v. Brown, 31 Cal. 4th 518, 553 (2003), found petitioner waived this claim by not raising it in the trial court. (Ex. E at 16-17.) Specifically, the Court of Appeal held "[petitioner's] general claim of misconduct with respect to the prosecutor's argument that defense counsel was 'clever' or engaged in trickery was waived when no objection was made." (Id. at 17.)

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred. See id. at 750. The rule cited here by the Court of Appeal, specifically, that a defendant must make a contemporaneous objection at trial in order to preserve an issue on appeal, has been found to be a sufficiently independent and adequate procedural rule to support the denial of a federal petition on grounds of procedural default. See Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (finding claim procedurally defaulted based on California's contemporaneous objection rules).[5]

Accordingly, petitioner is not entitled to habeas relief on this claim.

### b. Fabricating Evidence

With respect to petitioner's claim that the prosecutor improperly argued defense counsel had "fabricated" an explanation to exonerate petitioner, specifically, that Merino was actually a participant in the crime, the Court of Appeal found the claim was preserved but that the comment did not constitute misconduct. (Ex. E at 17.) This Court agrees.

"A court should not lightly infer that a prosecutor intends an ambiguous remark to

---

[5] Although a petitioner may avoid procedural default by showing cause for the default and actual prejudice as a result of the alleged violation of federal law, or by showing the failure to consider the claims will result in a fundamental miscarriage of justice, see Coleman 501 U.S. at 750, petitioner here has made no such showing or even an effort to do so.

12

have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." Williams v. Borg, 139 F.3d 737, 744 (9th Cir. 1998) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974)). In Williams, the prosecutor's comment that defendant "pay the price" could have referred to either the crimes defendant committed or could have referred to defendant insisting on going to trial. The comment was found not to be prejudicial because in the context of the entire proceedings it was "fair to infer" the comment referred to the crimes defendant had committed. See Williams, 139 F.3d at 744. As the Williams court noted, "'prosecutorial comment must be examined in context.'" See id. at 745 (quoting United States v. Robinson, 485 U.S. 25, 33 (1988)).

Here, the Court of Appeal, found as follows:

> While it can constitute misconduct for a prosecutor to suggest that defense counsel is acting unethically or improperly (*People v. Young* (2005) 34 Cal.4th 1149, 1189), that is not what the prosecutor did here. Read in context, the prosecutor's argument was that defense counsel reviewed the evidence introduced at trial and "fabricated" an explanation consistent with the evidence that exonerated the [petitioner]. He urged the jury not to accept this explanation. To suggest that defense counsel attempted to explain the evidence in a manner consistent with his client's innocence is not to accuse defense counsel of improper behavior. To fabricate evidence is, of course, improper. To offer–i.e., "fabricate"–innocent explanations for a defendant's conduct that are consistent with the evidence is an important purpose of attorney argument. (See, e.g., *People v. Cummings* (1993) 4 Cal.4th 1233, 1302, fn. 47.)

(Ex. E at 17.)

Based on a review of the record, the state court's decision cannot be said to be unreasonable. Read in context, it was "fair to infer" the prosecutor's comment suggested not that defense counsel had fabricated evidence, but, rather, that defense counsel was now attempting to explain away the evidence in a manner consistent with petitioner's innocence. See Williams, 139 F.3d at 744. Moreover, it cannot be said the "prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process." See Johnson, 63 F.3d at 929.

Accordingly, petitioner is not entitled to habeas relief on this claim.

5. Trial Court's Denial of Motion to Dismiss

Petitioner claims the trial court erroneously denied his motion to dismiss the

13

1 aggravated kidnapping conviction. As set forth above, defense counsel, prior to sentencing,

2 moved pursuant to Penal Code section 1385 to dismiss that charge. Section 1385 provides in

3 relevant part:

> The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed.

Cal. Pen. Code § 1385(a).

Section 1385 affords a trial court "limited" discretion to dismiss a criminal action. People v. Superior Court (Romero), 13 Cal. 4th 497, 530 (1996). The trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects," the defendant should be deemed not to have committed the charge to be dismissed. People v. Williams, 17 Cal. 4th 148, 161 (1998).

Petitioner makes no reference to any federal law or constitutional provision in support of his claim. Rather, he alleges error solely under state law; consequently, the claim is not cognizable on federal habeas review. See Estelle, 502 U.S. at 67-68.

Accordingly, petitioner is not entitled to federal habeas relief on this claim.

6. Cruel and Unusual Punishment

Petitioner claims his three-years-to-life sentence for "carjack-kidnapping" is cruel and unusual punishment.[6] Petitioner bases his claim on the fact that he was young when the crime was committed, he had served no prior prison terms, and the victim was not harmed. (Pet. at 8.)

The Court of Appeal, citing People v. Norman, 109 Cal. App. 4th 221, 229 (2003) found petitioner waived this claim by not raising it in the trial court at sentencing. (Ex. E at

---

[6] Petitioner was not sentenced under California's Three Strikes Law. While the information alleged petitioner had suffered two prior felony convictions, the prosecution dismissed the priors before sentencing. (Ex. B at 520-21.) Petitioner was sentenced on the aggravated kidnapping conviction under California Penal Code § 209.5, which mandates a term of life with the possibility of parole. (Ex. A at 418-35.) Additionally, petitioner received the middle term of two years for attempted second degree robbery, under Penal Code §§ 211/664, and one-third the middle term of three years, i.e., one year, for second degree robbery, under Penal Code § 211. (Id.)

14

20.) As discussed above, in cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred. See Coleman, 501 U.S. at 750. As also discussed above, California's contemporaneous objection requirement constitutes a valid procedural default. See Paulino, 371 F.3d at 1092-93 (9th Cir. 2004).[7]

Moreover, the claim fails on the merits. The Eighth Amendment to the United States Constitution provides there "shall not be . . . cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Ewing v. California, 538 U.S. 11, 23 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991). "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." See Solem v. Helm, 463 U.S. 277, 289-90 (1983) (emphasis and alterations in original). Eighth Amendment jurisprudence "gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle – the precise contours of which are unclear." Lockyer v. Andrade, 538 U.S. 63, 76 (2003) (internal quotations and citations omitted). In Harmelin, the Supreme Court upheld a life sentence without the possibility of parole for an offender who had no prior felony convictions and whose sole conviction was for possessing 672 grams of cocaine. 501 U.S. at 995, 961. In Andrade, the Supreme Court upheld a sentence of two consecutive 25-year terms for the nonviolent theft of videotapes worth $150. 538 U.S. at 77.

Here, as noted by the Court of Appeal, petitioner "robbed and then terrorized an innocent man for over an hour, using him as a forced chauffeur during a hunt for other robbery victims." (Ex. E at 21.) Further, in so doing, petitioner created a situation that was dangerous to the victim, the perpetrators, and other people on the road. Given the sentences that have been upheld by the Supreme Court, petitioner's sentence cannot be deemed

---

[7] Again, petitioner has made no attempt to avoid procedural default by showing cause and prejudice or a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750.

15

"grossly disproportionate" to his crimes.

Accordingly, petitioner is not entitled to habeas relief on this claim.

### C. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. See Rules Governing § 2254 Cases, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard, id. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

### IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is hereby DENIED, and a certificate of appealability is hereby DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

Additionally, the Clerk is directed to substitute Warden W.J. Sullivan on the docket as the respondent in this action.

The Clerk is further directed to change petitioner's address to Antione L. Bailey, #V-96661, CSP–Los Angeles County, P.O. Box 8457, Lancaster, CA 93539-8457.

IT IS SO ORDERED.

DATED: March 1, 2012

MAXINE M. CHESNEY
United States District Judge